UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Judge McMahon

------------------------------------------------------------

HILDA L. SOLIS, Secretary of Labor,
United States Department of Labor,

:

: Civil File No 12 CV 1511

                Plaintiff,

       v.

:

: **COMPLAINT**

JOHN V. MCNAMEE, JR., KEVIN DUNPHY,
MANUEL FARINA, JOHN T. HALL, JOHN
HAMILTON, MICHELE SULLIVAN, JOHN
WALSH, EXHIBITION EMPLOYEES LOCAL
829 I.A.T.S.E. PENSION PLAN, EXHIBITION
EMPLOYEES LOCAL 829 I.A.T.S.E. ANNUITY
FUND, and EXHIBITION EMPLOYEES LOCAL
829 I.A.T.S.E. VACATION FUND,

:

:

:

:

:



          Defendants.

:

------------------------------------------------------------

      Plaintiff Hilda L. Solis, Secretary Of Labor, United States Department of Labor (the

"Secretary"), alleges:

      This action arises under Title I of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended, and is brought by the Secretary pursuant to

ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5), to obtain relief for breaches of fiduciary

duty under ERISA § 409, 29 U.S.C. § 1109, and to enjoin acts and practices which violate the

provisions of Title I of ERISA. The Secretary also seeks other appropriate equitable and injunctive

relief in order to redress violations and enforce the provisions of Title I of ERISA.

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29

      U.S.C. § 1132(e)(1).

2. Venue of this action lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because each of the employee pension benefit plans and employee benefit plan at issue in the case are administered in New York, NY within the Southern District of New York and the breaches occurred in New York, NY within the Southern District of New York.

## PARTIES

3. The Secretary, pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and other parties who are in violation of Title I of ERISA.

4. The Exhibition Employees Local 829 I.A.T.S.E. ("Local 829") is and was at all relevant times an employee organization within the meaning of ERISA § 3(4), 29 U.S.C. § 1002(4).

5. Local 829 maintains an account referred to as the General Fund. Money held in the General Fund is held by Local 829 for the benefit of Local 829.

6. The International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ("IATSE") is the international union with which Local 829 is affiliated.

7. The Exhibition Employees Local 829 I.A.T.S.E. Pension Plan (the "Pension Plan") is and was at all relevant times an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is covered by Title I of ERISA pursuant to ERISA § 4(a)(2), 29 U.S.C. § 1003(a)(2), because it is an employee benefit plan established or maintained by Local 829, which is an employee organization representing employees engaged in commerce or in an industry or activity affecting commerce.

8. The Exhibition Employees Local 829 I.A.T.S.E. Annuity Fund (the "Annuity Fund") is and was at all relevant times an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is covered by Title I of ERISA pursuant to ERISA § 4(a)(2), 29 U.S.C. § 1003(a)(2), because it is an employee benefit plan established or maintained by Local 829, which is an employee organization representing employees engaged in commerce or in an industry or activity affecting commerce.

9. The Exhibition Employees Local 829 I.A.T.S.E. Vacation Fund (the "Vacation Fund") is and was at all relevant times an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(3), and is covered by Title I of ERISA pursuant to ERISA § 4(a)(2), 29 U.S.C. § 1003(a)(2), because it is an employee benefit plan established or maintained by Local 829, which is an employee organization representing employees engaged in commerce or in an industry or activity affecting commerce.

10. The Pension Plan, the Annuity Fund, and the Vacation Fund are hereinafter referred to collectively as the "Funds." The Funds are named as Defendants in this Complaint for the purpose of ensuring complete relief among the parties under Federal Rule of Civil Procedure 19.

11. At all relevant times, the Funds had identical boards of trustees.

12. Because the Funds each cover some or all of Local 829's members, Local 829 is a party in interest with respect to each Fund within the meaning of ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D).

13. The Exhibition Employees Local 829 I.A.T.S.E. Hiring Hall Fund (the "Hiring Hall Fund") is an organization whose stated purpose is to provide a hiring hall where members can shape up for available work in the industry.

3

14. The Hiring Hall Fund has at all relevant times had the same Board of Trustees as the Funds.

15. The Hiring Hall Fund is and was at all relevant times an employer whose employees are covered by the Funds and is therefore a party in interest to the Funds as defined by ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

16. The IATSE National Health & Welfare Fund (the "IATSE Welfare Fund") is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(3). The IATSE Welfare Fund is one of several trust funds established by IATSE through collective bargaining with various entertainment industry employers. Local 829 members receive benefits from the IATSE Welfare Fund, and Local 829 sends the contributions to IATSE.

17. Defendant John V. McNamee, Jr. ("McNamee") is and was at all relevant times a trustee of the Funds. McNamee exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. McNamee was therefore a fiduciary of the Funds within the meaning of ERISA § 3 (21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

18. During all relevant times, Defendant McNamee was the President of Local 829.

19. Defendant Kevin Dunphy ("Dunphy") is and was at all relevant times a trustee of the Funds. Dunphy exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Dunphy was therefore a fiduciary of the Funds within the meaning of ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

20. Defendant Manuel Farina ("Farina") was at all relevant times a trustee of the Funds. Farina

4

exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Farina was therefore a fiduciary of the Funds within the meaning of ERISA § 3(21) (i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

21.    During all relevant times, Defendant Farina was a Vice President of Local 829.

22.    On information and belief, Defendant Farina is no longer a trustee of the Funds.

23.    Defendant John T. Hall ("Hall") is and was at all relevant times a trustee of the Funds. Hall exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Hall was therefore a fiduciary of the Funds within the meaning of ERISA § 3(21) (i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

24.    Defendant John Hamilton ("Hamilton") is and was at all relevant times a trustee of the Funds. Hamilton exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Hamilton was therefore a fiduciary of the Funds within the meaning of ERISA § 3(21) (i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

25.    Defendant Michele Sullivan ("Sullivan") became a trustee of the Funds sometime in 2006 and during all relevant times thereafter was a trustee of the Funds. Sullivan exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets,

and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Sullivan was therefore a fiduciary of the Funds within the meaning of ERISA § 3(21) (i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

26. At all relevant times, Defendant Sullivan was the assistant to McNamee, the President of Local 829.

27. Between 2006 and sometime in 2011, Defendant John Walsh ("Walsh") was a trustee of the Funds. Walsh exercised discretionary authority or discretionary control respecting management of the Funds, exercised authority or control respecting management or disposition of the Funds' assets, and/or had discretionary authority or discretionary responsibility in the administration of the Funds. Walsh was therefore was a fiduciary of the Funds within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). 29 U.S.C. § 1002(21).

28. On information and belief, Defendant Walsh is no longer a trustee of the Funds.

29. Defendants McNamee, Dunphy, Farina, Hall, Hamilton, Sullivan, and Walsh are hereinafter collectively referred to as the "Trustee Defendants."

30. Each of the Trustee Defendants had plenary authority, discretion, and responsibility to manage and control the assets of the Funds.

## FACTUAL ALLEGATIONS

### Transfers from the Pension Plan to the Hiring Hall Fund

31. During the time period from March 2006 to the present, some or all of the Hiring Hall Fund's members were and are members of Local 829 and participants in the Pension Plan.

32. During the time period from March 2006 to the present, the Hiring Hall Fund's member population and the Pension Plan's participant population were and are not identical.

33. During all relevant times, Defendants McNamee, Farina, Hall, and Sullivan received salaries

from the Funds and the Hiring Hall Fund.

34. Beginning in March 2006 and continuing through at least December 2010, the Trustee Defendants transferred and/or permitted transfers totaling at least $2.2 million in Pension Plan assets from the Pension Plan's Sterling National Bank account, directly or indirectly, to the Hiring Hall Fund.

35. Defendant McNamee authorized the transfers from the Pension Plan to the Hiring Hall Fund.

36. Defendant Hall authorized some or all of the transfers from the Pension Plan to the Hiring Hall Fund.

37. As trustees of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Pension Plan that were transferred to the Hiring Hall Fund.

38. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or otherwise monitor Defendants McNamee and Hall's transfer of the Pension Plan assets to the Hiring Hall Fund.

39. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Pension Plan to the Hiring Hall Fund.

40. The money transferred from the Pension Plan to the Hiring Hall Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

41. During the period after March 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the transfers from the Pension Plan to the Hiring Hall Fund.

**The Pension Plan's 2010 Agreement with the Hiring Hall Fund**

42. On June 24, 2010, Defendant McNamee executed a document between the Pension Plan and

the Hiring Hall Fund purporting to memorialize a loan from the Pension Plan to the Hiring Hall Fund (the "Hiring Hall Fund Loan Agreement").

43. Defendant McNamee executed the Hiring Hall Fund Loan Agreement on behalf of the Hiring Hall Fund in his capacity as President of Local 829.

44. Defendant Hall signed the Hiring Hall Fund Loan Agreement as a witness.

45. The Hiring Hall Fund Loan Agreement states that the Pension Plan loaned the Hiring Hall Fund $1.573 million at an annual interest rate of 3% with payments to be made monthly.

46. The Hiring Hall Fund Loan Agreement was unsecured and no promissory note or any accompanying loan documents were created.

47. On information and belief, the Hiring Hall Fund Loan Agreement memorialized a number of money transfers from the Pension Plan to the Hiring Hall Fund that occurred prior to the execution of the Hiring Hall Plan Fund Loan Agreement.

48. On information and belief, the Hiring Hall Fund has not paid back the money it received from the Pension Plan pursuant to the Hiring Hall Fund Loan Agreement.

49. The money transferred from the Pension Plan to the Hiring Hall Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

50. During the period after March 2006 to the present, despite having knowledge of the Hiring Hall Fund Loan Agreement, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan to the Hiring Hall Fund memorialized in the Hiring Hall Fund Loan Agreement.

**Transfers from the Pension Plan to the General Fund**

51. During the time period from March 2006 to the present, Local 829's member population and

the Pension Plan's participant population were and are not identical.

52. During all relevant times, Defendants McNamee, Farina, Hall, and Sullivan received salaries from the Funds and Local 829.

53. Beginning in March 2006 and continuing through at least December 2010, the Trustee Defendants transferred and/or permitted transfers totaling at least $450,000.00 in Pension Plan assets from the Pension Plan's Sterling National Bank account, directly or indirectly, to Local 829's General Fund.

54. Defendant McNamee authorized the transfers from the Pension Plan to the General Fund.

55. Defendant Hall authorized some or all of the transfers from the Pension Plan to the General Fund.

56. As trustees of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Pension Plan that were transferred to the General Fund.

57. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or otherwise monitor Defendants McNamee and Hall's transfers of Pension Plan assets to the General Fund.

58. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Pension Plan to the General Fund.

59. The money transferred from the Pension Plan to General Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

60. During the period after March 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan to the General

Fund.

## The Pension Plan's 2010 Agreement with the General Fund

61. On June 24, 2010, Defendant McNamee executed a document between the Pension Plan and the General Fund purporting to memorialize a loan from the Pension Plan to the General Fund (the "General Fund Loan Agreement").

62. The money purported to be loaned pursuant to the General Fund Loan Agreement was intended to go to Local 829.

63. Defendant McNamee executed the General Fund Loan Agreement on behalf of the General Fund in his capacity as President of Local 829.

64. Defendant Hall signed the General Fund Loan Agreement as a witness.

65. The General Fund Loan Agreement states that the Pension Plan loaned the General Fund $288,000.00 to be repaid in installments over 360 months.

66. The General Fund Loan Agreement was unsecured and no promissory note or any accompanying loan documents were created.

67. On information and belief, the General Fund Loan Agreement memorialized a number of money transfers from the Pension Plan to the General Fund that occurred prior to the execution of the General Fund Loan Agreement.

68. On information and belief, the General Fund has not paid back the money it received from the Pension Plan pursuant to the General Fund Loan Agreement.

69. The money transferred from the Pension Plan to the General Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

70. During the period after March 2006 to the present, despite having knowledge of the General

Fund Loan Agreement, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan to the General Fund.

**Transfers from the Pension Plan to the Annuity Fund**

71. During the time period from March 2006 to the present, the Pension Plan's participant population and the Annuity Fund's participant population were and are not identical.

72. Beginning in March 2006 and continuing through at least December 2010, the Trustee Defendants transferred and/or permitted transfers totaling at least $48,000.00 in Pension Plan assets from the Pension Plan's Sterling National Bank account, directly or indirectly, to the Annuity Fund.

73. Defendant McNamee authorized the transfers from the Pension Plan to the Annuity Fund.

74. Defendant Hall authorized some or all of the transfers from the Pension Plan to the Annuity Fund.

75. As trustees of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Pension Plan that were transferred to the Annuity Fund.

76. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or otherwise monitor Defendants McNamee and Hall's transfers of Pension Plan assets to the Annuity Fund.

77. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Pension Plan to the Annuity Fund.

78. The money transferred from the Pension Plan to the Annuity Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

79. During the period after March 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan to the Annuity Fund.

## Additional Transfer(s) from the Pension Plan to the Annuity Fund

80. According to the Pension Plan's accounting books and ledgers each year from 2006 to 2010, the Annuity Fund owed approximately $300,000.00 to the Pension Plan during this time period.

81. The amounts owed by the Annuity Fund to the Pension Plan were recorded in the Pension Plan's accounting books and ledgers each year from 2006 to 2010 as an outstanding loan from the Pension Plan to the Annuity Fund.

82. The Pension Plan does not maintain a loan document memorializing a loan of $300,000.00 from the Pension Plan to the Annuity Fund.

83. On information and belief, little or no money has been paid back to the Pension Plan by the Annuity Fund for the purported loan.

84. During the period from 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the transfer of assets from the Pension Plan to the Annuity Fund.

85. The failure to remedy the transfer of assets from the Pension Plan to the Annuity Fund caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

## Transfers between the Pension Plan and the Vacation Fund

86. During the time period from March 2006 to the present, the Pension Plan's participant population and the Vacation Fund's participant population were and are not identical.

87. Beginning in March 2006 and continuing through at least December 2010, the Trustee

Defendants transferred and/or permitted transfers totaling at least $96,000.00 in Pension Plan assets from the Pension Plan's Sterling National Bank account, directly or indirectly, to the Vacation Fund.

88. Beginning in March 2006 and continuing through at least December 2010, the Trustee Defendants transferred and/or permitted transfers totaling at least $73,000.00 in Vacation Fund assets from the Vacation Fund's Sterling National Bank account, directly or indirectly, to the Pension Plan.

89. Defendant McNamee authorized the transfers between the Pension Plan and the Vacation Fund.

90. Defendant Hall authorized some or all of the transfers between the Pension Plan and the Vacation Fund.

91. As trustees of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets that were transferred between the Pension Plan and the Vacation Fund.

92. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or monitor Defendants McNamee and Hall's transfer of assets between the Pension Plan and the Vacation Fund.

93. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers between the Pension Plan and the Vacation Fund.

94. During the period after March 2006 to the present, the Trustee Defendants have failed to fully remedy the improper transfers between the Pension Plan and the Vacation Fund.

95. The money transferred from the Pension Plan to the Vacation Fund caused a loss to the Pension Plan, including, but not limited to, the amount of money that remains to be repaid to

the Pension Plan and lost opportunity costs.

## Transfers from the Pension Plan to the IATSE Welfare Fund

96. During the time period from March 2006 to the present, the Pension Plan's participant population and the IATSE Welfare Fund's participant population were and are not identical.

97. On information and belief, Defendant McNamee at all relevant times was a trustee of the IATSE Welfare Fund.

98. Beginning on June 30, 2008 and continuing through at least April 14, 2010, the Trustee Defendants transferred and/or permitted transfers totaling at least $83,000.00 in Pension Plan assets from the Pension Plan's Sterling National Bank account, directly or indirectly, to the IATSE Welfare Fund.

99. Defendant McNamee authorized the transfers from the Pension Plan to the IATSE Welfare Fund.

100. Defendant Hall authorized some or all of the transfers from the Pension Plan to the IATSE Welfare Fund.

101. As trustees of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Pension Plan that were transferred to the IATSE Welfare Fund.

102. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or otherwise monitor Defendants McNamee and Hall's transfer of Pension Plan assets to the IATSE Welfare Fund.

103. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Pension Plan to the IATSE Welfare Fund.

104. The money transferred from the Pension Plan to the IATSE Welfare Fund caused a loss to

the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

105. During the period after June 30, 2008 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan to the IATSE Welfare Fund.

## Transfers from the Annuity Fund to Annuity Fund Participants

106. From 2006 to the present, at the Trustee Defendants' direction, the Annuity Fund transferred as a purported loan to Defendant McNamee at least $314,000.00.

107. From 2006 to the present, at the Trustee Defendants' direction, the Annuity Fund transferred $320,000.00 as a purported loan to a participant of the Annuity Fund.

108. There are no records that the transfers made to Defendant McNamee and the participant that received $320,000.00 have been paid back to the Annuity Fund.

109. In 2009, the Annuity Fund had at least $5,985,176.00 in outstanding loans to Annuity Fund participants.

110. There are no loan agreements for the Annuity Fund's transfers to participants between 2006 and 2010.

111. The Annuity Fund's plan documents require the Trustee Defendants to approve any loan made to Annuity Fund participants.

112. On information and belief, either Defendant McNamee or Defendant Sullivan formally approved the transfers made to Annuity Fund Participants.

113. On information and belief, the Trustee Defendants did not require that Annuity Fund participants demonstrate adequate security prior to receiving transfers from the Annuity Fund.

114. The money transferred from the Annuity Fund to Annuity Fund participants caused a loss to the Annuity Fund, including, but not limited to, any amounts of money that have not been repaid and lost opportunity costs.

## Transfers from the Annuity Fund to Jay Wechselblatt

115. Until 2010, Complete Management & Tax Consultants Services, Inc. ("CMTC") was the Funds' accountant. Jay Wechselblatt ("Wechselblatt") is and was at all relevant times an officer, director, and shareholder of CMTC.

116. Wechselblatt was at all relevant times a party in interest to each of the Funds, pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because he was a person providing services to each of the Funds.

117. Wechselblatt provided accounting services to each of the Funds, including the Pension Plan and the Annuity Fund, until 2010.

118. Wechselblatt was not an employee of the Pension Plan or the Annuity Fund or a participant in the Pension Plan or the Annuity Fund.

119. Despite not being an employee of the Annuity Fund or a participant in the Annuity Fund, Wechselblatt improperly maintained an account with the Annuity Fund.

120. Wechselblatt received two distributions from the Annuity Fund in 2008: (1) approximately $53,638.78 on April 9, 2008; and (2) approximately $7,055.54 on May 22, 2008.

121. Despite not being an employee of the Pension Plan, on information and belief, Wechselblatt began receiving a distribution of over $30,000.00 per year from at least 2006 to the present from the Pension Plan.

122. On information and belief, the Trustee Defendants approved the distributions made to Wechselblatt from the Annuity Fund and the Pension Plan.

123. Defendants McNamee and Hall authorized the transfers from the Annuity Fund to Wechselblatt.

124. On information and belief, Defendants McNamee and Hall authorized the transfers from the Pension Plan to Wechselblatt.

125. As trustees of the Annuity Fund and the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Annuity Fund and the Pension Plan that were transferred to Wechselblatt.

126. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to question, review or monitor Defendants McNamee and Hall's transfer of Annuity Fund and Pension Plan assets to Wechselblatt.

127. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Annuity Fund and the Pension Plan to Wechselblatt.

128. The money transferred from the Pension Plan and the Annuity Fund to Wechselblatt caused a loss to the Pension Plan and the Annuity Fund, including, but not limited to, the amount of the money transferred and lost opportunity costs.

129. During the period after 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Pension Plan and the Annuity Fund to Wechselblatt.

**Transfers from the Funds to William Yeretz**

130. William Yeretz ("Yeretz") was a participant in each of the Funds until his death in 2008.

131. At all relevant times, Yeretz was a party in interest to each of the Funds, pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), because he was an employee of an employer whose employees are covered by the Funds.

132. Yeretz died in 2008.

133. Yeretz was not an employee of any of the Funds.

134. On information and belief, Yeretz did not provide any legal services to the Funds in 2006, 2007, or 2008.

135. Nonetheless, between 2006 and 2009, the Funds collectively paid Yeretz a total amount of at least $38,000.00 for legal services.

136. Defendant McNamee authorized the transfers from the Funds to Yeretz.

137. Defendant Hall authorized some or all of the transfers from the Funds to Yeretz.

138. As trustees of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to manage and control the assets of the Funds that were transferred to Yeretz.

139. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to conduct any activities to review, question, or otherwise monitor Defendants McNamee and Hall's transfer of the Funds' assets to Yeretz.

140. Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh failed to prevent the improper transfers from the Funds to Yeretz.

141. The money transferred from the Pension Plan, the Annuity Fund, and the Vacation Fund to Yeretz caused a loss to the Pension Plan, including, but not limited to, the amount of the money transferred and lost opportunity costs.

142. During the period after 2006 to the present, the Trustee Defendants failed to take any meaningful steps to remedy the improper transfers from the Funds to Yeretz.

## The Annuity Fund's Imprudent Investment in Apple REIT Six, Inc.

143. From March 2006 to the present, the Annuity Fund has held at least 457,286 shares of a Real Estate Investment Trust ("REIT") named Apple REIT Six, Inc. ("Apple REIT Six").

144. A REIT is a company that owns and usually operates income-producing real estate.

145. To qualify as a REIT, a company must have most of its assets and income tied to a real estate investment and must distribute at least 90 percent of its taxable income to shareholders annually in the form of dividends.

146. Each share of Apple REIT Six was purchased for $11.00.

147. The Annuity Fund paid $5,030,145.00 for the Apple REIT Six investment.

148. The investment in Apple REIT Six represented at least 30% of the Annuity Fund's assets. The Apple REIT Six invests almost exclusively in extended stay hotels of two national chains.

149. Apple REIT Six does not trade on any exchange, nor is there any public market for shares of Apple REIT Six.

150. Apple REIT Six pays out monthly distributions to investors, which are ordinarily funded by income producing properties.

151. Apple REIT Six provides for both dividend reinvestment at $11.00 per share through its Dividend Reinvestment Plan ("DRIP") and limited redemption of shares at $11.00 (after being held for three years) under its Unit Redemption Program ("URP").

152. DRIP reinvestment is unlimited.

153. URP redemption has been limited to three percent of the weighted average number of shares outstanding during the 12-month period immediately prior to the date of redemption.

154. The price of Apple REIT Six shares has never changed despite substantial market fluctuation, particularly in the real estate sector.

155. On information and belief, during the period between March 2006 and the present, the Trustee Defendants failed to conduct an investigation, consult with an independent expert, or

otherwise evaluate the effect of the illiquidity of the investment in Apple REIT Six and the limited redemption policy of shares on the overall investment portfolio of the Annuity Plan.

156.  On information and belief, during the period between March 2006 and the present, the Trustee Defendants failed to conduct an investigation, consult with an independent expert, or otherwise evaluate the prudence of retaining Apple REIT Six investment within the overall investment portfolio of the Annuity Plan, after the Annuity Plan's initial investment.

157.  David Lerner Associates, Inc. ("DLA") acted as the Annuity Fund's advisor for the investment in Apple REIT Six.

158.  DLA is the sole distributor of Apple REIT Six.

159.  On May 27, 2011, the Financial Industry Regulatory Authority ("FINRA") filed an enforcement complaint against DLA regarding a REIT called Apple REIT 10, which has nearly identical policies regarding share redemption as Apple REIT Six.

160.  FINRA's enforcement complaint alleges that Apple REIT Six has never changed the price of its shares despite (1) market fluctuations, including the economic downturn for commercial real estate in general and the hotel and hospitality industry in particular; (2) net income declines; (3) increased leverage through borrowings; and (4) return of capital to investors through distributions.

161.  On information and belief, the Trustee Defendants have not conducted an investigation, consulted with an independent expert, or otherwise evaluated the Apple REIT Six investment in light of FINRA's enforcement complaint against DLA.

162.  On information and belief, the Trustee Defendants do not have an awareness of the current value of the Apple REIT Six investment.

163.  On information and belief, the Trustee Defendants have not evaluated whether the Annuity

Fund has any legal claim against DLA in relation to the Annuity Fund's investment in Apple REIT Six.

## ERISA VIOLATIONS

### Transfers from the Pension Plan to the Hiring Hall Fund

164. By the acts and omissions described in paragraphs 31-41, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and its beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

165. By the acts and omissions described in paragraphs 31-41, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

166. By the acts and omissions described in paragraphs 31-41, Defendants McNamee and Hall caused the Pension Plan to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Pension Plan to, or use of assets of the Pension Plan by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

167. By the acts and omissions described in paragraphs 31-41, Defendants McNamee and Hall dealt with the assets of the Pension Plan in their own interests, since Defendants McNamee

and Hall received salaries from the Hiring Hall Fund, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

168. By the acts and omissions described in paragraphs 31-41, Defendants McNamee and Hall acted in transactions involving the Pension Plan on behalf of the Hiring Hall Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

169. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh enabled their co-fiduciaries to commit the breaches of fiduciary duty described in paragraphs 31-41, and are liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

## Pension Plan's 2010 Agreement with the Hiring Hall Fund

170. By the acts and omissions described in paragraphs 31-33 and 42-50, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and their beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

171. By the acts and omissions described in paragraphs 31-33 and 42-50, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar

with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

172. By the acts and omissions described in paragraphs 31-33 and 42-50, the Trustee Defendants caused the Funds to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Pension Plan to, or use of assets of the Pension Plan by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

173. By the acts and omissions described in paragraphs 31-33 and 42-50, the Trustee Defendants caused the Pension Plan to engage in transactions which they knew or should have known, constituted direct or indirect lending of money or extensions of credit between the Pension Plan and a party in interest, in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

174. By the acts and omissions described in paragraphs 35-43, Defendants McNamee, Farina, Hall, and Sullivan dealt with the assets of the Pension Plan in their own interest, since Defendants McNamee, Farina, Hall, and Sullivan received salaries from the Hiring Hall Fund in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

175. By the acts and omissions described in paragraphs 31-33 and 42-50, the Trustee Defendants acted in transactions involving the Pension Plan on behalf of the Hiring Hall Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2)).

176. By knowingly participating in the acts and omissions of their co-fiduciaries described in paragraphs 31-33 and 42-50, knowing such acts and omissions to be breaches of fiduciary duty, each of the Trustee Defendants is liable for the breaches of fiduciary duty of their co-fiduciaries pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

177. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Pension Plan, each of the Trustee Defendants enabled their co-fiduciaries to commit the above-described breaches of fiduciary duty described in paragraphs 31-33 and 42-50, and is liable for those breaches of fiduciary duty committed by their co-fiduciaries pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

178. By failing to make reasonable efforts under the circumstances to remedy the above-described breaches of fiduciary duty by their co-fiduciaries described in paragraphs 31-33 and 42-50, despite having knowledge of such fiduciary breaches, each of the Trustee Defendants is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Transfers from the Pension Plan to the General Fund**

179. By the acts and omissions described in paragraphs 51-60, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and its beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

180. By the acts and omissions described in paragraphs 51-60, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims,

in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

181. By the acts and omissions described in paragraphs 51-60, Defendants McNamee and Hall caused the Pension Plan to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Pension Plan to, or use of assets of the Pension Plan by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

182. By the acts and omissions described in paragraphs 51-60, Defendants McNamee and Hall dealt with the assets of the Pension Plan in their own interests, since Defendant McNamee was a trustee, employee, and member of Local 829, and Defendant Hall was an employee of Local 829, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

183. By the acts and omissions described in paragraphs 51-60, Defendants McNamee and Hall acted in transactions involving the Pension Plan on behalf of the General Fund and Local 829, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2)).

184. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh enabled their co-fiduciaries to commit breaches of fiduciary duty in paragraphs 51-60, and are liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

**Pension Plan's 2010 Agreement with the General Fund**

185. By the acts and omissions described in paragraphs 51-53 and 61-70, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest

of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and their beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

186. By the acts and omissions described in paragraphs 51-53 and 61-70, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

187. By the acts and omissions described in paragraphs 51-53 and 61-70, the Trustee Defendants caused the Funds to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Pension Plan to, or use of assets of the Pension Plan by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

188. By the acts and omissions described in paragraphs 51-53 and 61-70, the Trustee Defendants caused the Pension Plan to engage in transactions which they knew or should have known, constituted direct or indirect lending of money or extensions of credit between the Pension Plan and a party in interest, in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

189. By the acts and omissions described in paragraphs 51-60, Defendants McNamee, Dunphy, Farina, Hall, and Sullivan dealt with the assets of the Pension Plan in their own interests, since Defendant McNamee was a trustee, employee, and member of Local 829, Defendant Dunphy was a member of Local 829, Defendant Farina was an employee of Local 829,

Defendant Hall was an employee of Local 829, and Defendant Sullivan was an employee of Local 829, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

190.    By the acts and omissions described in paragraphs 51-53 and 61-70, the Trustee Defendants acted in transactions involving the Pension Plan on behalf of the General Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2)).

191.    By knowingly participating in the acts and omissions of their co-fiduciaries described in paragraphs 51-53 and 61-70, knowing such acts and omissions to be breaches of fiduciary duty, each of the Trustee Defendants is liable for the breaches of fiduciary duty of their co-fiduciaries, pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

192.    By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Pension Plan, each of the Trustee Defendants enabled their co-fiduciaries to commit the breaches of fiduciary duty described in paragraphs 51-53 and 61-70, and is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

193.    By failing to make reasonable efforts under the circumstances to remedy the above-described breaches of fiduciary duty by their co-fiduciaries described in paragraphs 51-53 and 61-70 despite having knowledge of such fiduciary breaches, each of the Trustee Defendants is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Transfers from the Pension Plan to the Annuity Fund**

194.    By the acts and omissions described in paragraphs 71-79, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and its beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

195. By the acts and omissions described in paragraphs 71-79, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

196. By the acts and omissions described in paragraphs 71-79, Defendants McNamee and Hall acted in transactions involving the Pension Plan on behalf of the Annuity Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2)).

197. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 71-79, and are liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

**Additional Transfer(s) from the Pension Plan to the Annuity Fund**

198. By the acts and omissions described in paragraphs 71 and 80-85, the Trustee Defendants

failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and their beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

199. By the acts and omissions described in paragraphs 71 and 80-85, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

200. By the acts and omissions described in paragraphs 71 and 80-85, the Trustee Defendants acted in transactions involving the Pension Plan on behalf of the Annuity Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2)).

201. By knowingly participating in the acts and omissions of their co-fiduciaries described in paragraphs 71 and 80-85, knowing such acts and omissions to be breaches of fiduciary duty, each of the Trustee Defendants is liable for the breaches of fiduciary duty of their co-fiduciaries, pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

202. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Pension Plan, each of the Trustee Defendants enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 71 and 80-85, and is liable

for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

203. By failing to make reasonable efforts under the circumstances to remedy the above-described breaches of fiduciary duty by their co-fiduciaries described in paragraphs 71 and 80-85 despite having knowledge of such fiduciary breaches, each of the Trustee Defendants is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Transfers between the Pension Plan and the Vacation Fund**

204. By the acts and omissions described in paragraphs 86-95, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and its beneficiaries and defraying reasonable expenses of administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

205. By the acts and omissions described in paragraphs 86-95, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

206. By the acts and omissions described in paragraphs 86-95, Defendants McNamee and Hall acted in transactions involving the Pension Plan on behalf of the Vacation Fund, which held interests adverse to the interests of the Pension Plan, in violation of ERISA § 406(b)(2), 29

U.S.C. § 1106(b)(2)).

207.     By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29

U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their

status as fiduciaries of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and

Walsh enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 86-

95, and are liable for those breaches of fiduciary duty committed by their co-fiduciaries,

pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

**Transfers from the Pension Plan to the IATSE Welfare Fund**

208.     By the acts and omissions described in paragraphs 96-105, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the

participants and beneficiaries and for the exclusive purpose of providing benefits to

participants of the Pension Plan and their beneficiaries and defraying reasonable expenses of

administering the Pension Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. §

1104(a)(1)(A).

209.     By the acts and omissions described in paragraphs 96-105, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Pension Plan solely in the interest of the

participants and beneficiaries and with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent person acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims,

in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

210.     By the acts and omissions described in paragraphs 96-105, Defendants McNamee and Hall

acted in transactions involving the Pension Plan on behalf of the IATSE Welfare Fund,

which held interests adverse to the interests of the Pension Plan, in violation of ERISA §

31

406(b)(2), 29 U.S.C. § 1106(b)(2)).

211.   By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29

U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their

status as fiduciaries of the Pension Plan, Defendants Dunphy, Farina, Hamilton, Sullivan, and

Walsh enabled their co-fiduciaries to commit breaches of fiduciary duty in paragraphs 96-

105, and is liable for those breaches of fiduciary duty committed by their co-fiduciaries,

pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

**Transfers from the Annuity Fund to Annuity Plan Participants**

212.   By the acts and omissions described in paragraphs 106-114, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Annuity Fund solely in the interest of the

participants and beneficiaries and for the exclusive purpose of providing benefits to

participants of the Annuity Fund and their beneficiaries and defraying reasonable expenses of

administering the Annuity Funds, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. §

1104(a)(1)(A).

213.   By the acts and omissions described in paragraphs 106-114, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Annuity Fund solely in the interest of the

participants and beneficiaries and with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent person acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims,

in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

214.   By the acts and omissions described in paragraphs 106-114, the Trustee Defendants failed to

discharge their fiduciary duties with respect to the Annuity Fund in accordance with the

documents and instruments governing the Annuity Fund, in violation of ERISA §

404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

215. By the acts and omissions described in paragraphs 106-114, the Trustee Defendants caused the Plan to engage in transactions which they knew or should have known, constituted direct or indirect lending of money or extensions of credit between the Annuity Fund and a party in interest, in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

216. By knowingly participating in the acts and omissions of their co-fiduciaries described in paragraphs 106-114, knowing such acts and omissions to be breaches of fiduciary duty, each of the Trustee Defendants is liable for the breaches of fiduciary duty of their co-fiduciaries, pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

217. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Annuity Fund, each of the Trustee Defendants enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 106-114, and is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

218. By failing to make reasonable efforts under the circumstances to remedy the above-described breaches of fiduciary duty by their co-fiduciaries described in paragraphs 106-114 despite having knowledge of such fiduciary breaches, each of the Trustee Defendants is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Transfers from the Annuity Fund to Jay Wechselblatt**

219. By the acts and omissions described in paragraphs 115-129, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan and the Annuity Fund solely

in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Pension Plan and the Annuity Fund and their beneficiaries and defraying reasonable expenses of administering the Pension Plan and the Annuity Fund, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

220. By the acts and omissions described in paragraphs 115-129, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan and the Annuity Fund solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

221. By the acts and omissions described in paragraphs 115-129, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Pension Plan and the Annuity Fund in accordance with the documents and instruments governing the Pension Plan and the Annuity Fund, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

222. By the acts and omissions described in paragraphs 115-129, the Trustee Defendants caused the Pension Plan and the Annuity Fund to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Pension Plan and the Annuity Fund to, or use of assets of the Pension Plan and the Annuity Fund by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

223. By knowingly participating in the acts and omissions of their co-fiduciaries described in paragraphs 115-129, knowing such acts and omissions to be breaches of fiduciary duty, each

of the Trustee Defendants is liable for the breaches of fiduciary duty of their co-fiduciaries, pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1).

224. By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Pension Plan and the Annuity Fund, each of the Trustee Defendants enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 115-129, and is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

225. By failing to make reasonable efforts under the circumstances to remedy the above-described breaches of fiduciary duty by their co-fiduciaries described in paragraphs 115-129 despite having knowledge of such fiduciary breaches, each of the Trustee Defendants is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3).

**Transfer from the Funds to William Yeretz**

226. By the acts and omissions described in paragraphs 130-142, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Funds solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Funds and their beneficiaries and defraying reasonable expenses of administering the Funds, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

227. By the acts and omissions described in paragraphs 130-142, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Funds solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with

such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

228.   By the acts and omissions described in paragraphs 130-142, Defendants McNamee and Hall caused the Funds to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Funds to, or use of assets of the Funds by, or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

229.   By failing to discharge their fiduciary duties in compliance with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) in the discharge of the specific responsibilities which gave rise to their status as fiduciaries of the Funds, Defendants Dunphy, Farina, Hamilton, Sullivan, and Walsh enabled their co-fiduciaries to commit the breaches of fiduciary duty in paragraphs 130-142 and is liable for those breaches of fiduciary duty committed by their co-fiduciaries, pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

## Annuity Fund's Imprudent Investment in the Apple REIT

230.   By the acts and omissions described in paragraphs 143-163, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Annuity Fund solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants of the Annuity Fund and their beneficiaries and defraying reasonable expenses of administering the Annuity Fund, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

231.   By the acts and omissions described in paragraphs 143-163, the Trustee Defendants failed to discharge their fiduciary duties with respect to the Annuity Fund solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the

36

circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Secretary requests that this Court enter an Order:

1.     Requiring the Trustee Defendants to provide an equitable accounting of the whereabouts and status of the Funds' assets and liabilities, any gains and losses in the Funds' investments, and any income earned or payments received by the Funds, between January 1, 2006 and the present;

2.     Requiring the Trustee Defendants to correct the prohibited transactions in which the Funds engaged;

3.     Requiring the offset of benefits due under the Funds to the Trustee Defendants against the amounts the Trustee Defendants owe to the Plan;

4.     Requiring the Trustee Defendants to restore to the Funds all losses attributable to their fiduciary breaches plus interest;

5.     Removing Defendants McNamee, Dunphy, Hall, Hamilton, and Sullivan as fiduciaries to the Funds;

6.     Permanently enjoining the Trustee Defendants from violating ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106;

7.     Permanently enjoining the Trustee Defendants from serving as fiduciaries or service providers to any employee pension benefit plan or employee benefit plan covered by the provisions of ERISA;

8.     Appointing an independent fiduciary for each of the Funds with plenary fiduciary authority and control over each of the Funds, including but not limited to, the authority to marshal assets on behalf of each of the Funds, pursue claims on each of the Fund's behalf, and take all appropriate actions for the rehabilitation or liquidation of each of the Funds and

distribution of assets to each of the Funds' participants, beneficiaries, and creditors as may be necessary and proper;

9. Ordering Defendants, their agents, employees, service providers, banks, accountants, and attorneys to preserve and provide the Secretary and the independent fiduciary all of the books, documents, and records relating to the finances and administration of the Funds;

10. Awarding the Secretary the costs of this civil action; and

11. Providing such further relief as is just and equitable.

DATED: February 29, 2012
New York, NY

_M. Patricia Smith_
M. PATRICIA SMITH
Solicitor of Labor

_Patricia M. Rodenhausen_
PATRICIA M. RODENHAUSEN
Regional Solicitor

_Darren Cohen_
DARREN COHEN (DC 4382)
Attorney

U.S. Department of Labor
Attorneys for HILDA L. SOLIS,
Secretary of Labor, Plaintiff

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3650
Cohen.Darren@dol.gov
NY-SOL-ECF@dol.gov